NATIONAL ACC. SOC. v. SPIRO.

(Circuit Court of Appeals, Sixth Circuit. February 2, 1897.)

No. 260.

1. EVIDENCE—PROOF OF LETTERS.
Upon the trial of an action against the N. Co., a witness testified that he mailed a letter, addressed to the home office of the company; that he received in reply a letter written on a printed letter head of the N. Co., which was signed with a rubber stamp fac simile of the signature of an officer of the company, who had signed a plea in the action, and which referred to the subject-matter of the witness' letter to the N. Co. *Held*, that the letter received by the witness was sufficiently proven, and was admissible.

2. APPEAL AND ERROR—DEFECTIVE ASSIGNMENTS OF ERROR—WHEN CONSIDERED.
Under the discretion reserved in rule 11 of the circuit court of appeals (21 C. C. A. cxii., 78 Fed. cxii.), as to noticing errors not assigned, if an assignment

which does not comply with the rule has any sound merit in it, and the court can be satisfied from the whole record that a probable injustice has been done, it will be disposed to notice the error so defectively assigned; but, if the error complained of is highly technical, the record indicating no probable injustice, the court will not incline to leniency in the enforcement of the rule, though, if the error had been correctly assigned, it might have felt constrained to reverse the judgment because of it.

3. PLEAS IN ABATEMENT—JUDGMENT.

Under the practice at common law prevailing in Tennessee, when a plaintiff succeeds upon an issue joined on a plea in abatement the proper judgment is peremptory that the plaintiff recover.

In Error to the Circuit Court of the United States for the Eastern District of Tennessee.

Action upon a contract of accident insurance between the National Accident Society, a corporation organized under the laws of the state of New York, and Herman Spiro, the assured. The contract provided, among other things, for the payment of $5,000 to Fannie Spiro, wife of the assured, in the event said assured should, during the continuance of the contract, come to his death "through external, violent, or accidental means." An action was begun upon this agreement by Fannie Spiro in the circuit court of the state of Tennessee for Knox county. The writ of summons was issued and executed April 17, 1894, by service upon one H. D. McBurney, as an "agent and adjuster" of said nonresident corporation found in Knox county. Upon the filing of the plaintiff's declaration the cause was removed to the circuit court of the United States for the Eastern district of Tennessee, upon petition of the defendant corporation, upon the ground that it was a citizen of the state of New York, and the plaintiff a citizen of the state of Tennessee. After the removal, the defendant filed a plea of abatement, denying that H. D. McBurney, on whom process had been served, was at the time of said service, or before or since, an agent of said corporation of any kind or character. This plea was verified by Jos. I. Barnum, secretary of the said corporation. To this a replication was filed, averring that when the writ of summons was served upon H. D. McBurney he was an agent of said corporation. Issue was joined, and a jury impaneled, who found the issue for the plaintiff; whereupon judgment was entered "that the plaintiff, Fannie Spiro, recover of said defendant her damages on account of the matters alleged in her declaration to be assessed at the present term of the court." A motion for a new trial was entered and overruled, and thereupon the same jury was again impaneled and sworn, to well and truly assess the damages so sustained, who found for the plaintiff in the sum of $5,055, for which judgment was duly entered. A bill of exceptions was allowed, and a writ of error has been sued out, and error assigned.

Cooper & Davis (McBurney & McBurney, of counsel), for plaintiff in error.

Ingersoll & Peyton, for defendant in error.

Submitted on briefs without oral argument.

Before TAFT and LURTON, Circuit Judges, and SEVERENS, District Judge.

LURTON, Circuit Judge, after making the foregoing statement of facts, delivered the opinion of the court.

The only questions presented by the assignment of errors relate to the proceedings on the trial of the issue joined on the plea in abatement. That issue was one of fact, and involved the single question as to whether H. D. McBurney was an agent of the National Accident Society of any kind at the time process was served upon him. The Tennessee statute of March 29, 1887 (Acts 1887, c. 226) concerning suits against corporations of other states "found

doing business in the state," provides that all such corporations may be sued in respect of business transacted within the state, and that process may be served "upon any agent of such corporation found within the county where the suit is brought, no matter what character of agent such person may be." To secure actual notice of the pendency of such suit, the statute further provides that it shall be the duty of the clerk of the court "to immediately mail a copy of the process to the home office of the corporation by registered letter," and to file with the papers a certificate of the fact of such mailing, and make a minute thereof upon the docket; "and that no judgment shall be taken in the case until 30 days after the date of such mailing." The fourth and last section of that act, as further security for actual notice, provides as follows:

"That it shall be the duty of the plaintiff to lodge at the home office of the company, with any person found there, a written notice from him or his attorney, stating that such suit has been brought, accompanied by a copy of the process and the return of the officer thereon, of which fact affidavit shall be made by the person lodging the same, stating the facts and with whom the notice was lodged, or else the plaintiff or his attorney shall make an affidavit that he has been prevented from serving such notice by circumstances which should reasonably excuse giving it, which circumstances the affidavit of the plaintiff or his attorney shall particularly state; and no judgment shall be taken until one or the other of these affidavits shall be filed and the court be satisfied that the notice had been given, or that the excuse for not doing so be sufficient."

All the steps required by this statute for the purpose of giving actual notice of the pendency of this suit in the circuit court of the state were complied with before the declaration was filed, and the only question made below upon the trial of the issues under the plea of abatement was in respect to the actual relationship of H. D. McBurney to the defendant below. The effect of the appearance in the state court for the purpose of removing the suit to the circuit court, unaccompanied by a plea in abatement, and unaccompanied by any qualification of the objects of the appearance, did not operate as a waiver of the right to object to the jurisdiction of the state court over the person of the defendant below, and did not cut off the right to plead in abatement after the removal had been perfected. This question was certified to the supreme court at a former term of this court. Society v. Spiro, 18 C. C. A. 382, 37 U. S. App. 639, 71 Fed. 897. The opinion of that court upon the question thus certified is reported in 164 U. S. 281, 17 Sup. Ct. 996. Upon the trial of the issues joined under the plea in abatement, Masterson Peyton, one of the attorneys representing the plaintiff below, testified without objection that the claim of Fannie Spiro was placed in the hands of Ingersoll & Peyton, a firm of lawyers at Knoxville, Tenn., for collection, and that he at once mailed a letter, duly addressed to the home office of the National Accident Society in the city of New York, asking for blank forms upon which he might make out formal proofs of the death of the assured, Herman Spiro. He then said, "I received this letter in reply," and started to read the same to the jury. The defendant objected to the introduction of this letter, "because

the same had not been duly proven." Before any ruling was made upon this objection, the witness further said:

"I am not acquainted with the handwriting of the defendant, or any of its officers. The letter is signed by Jos. I. Barnum, the secretary of the defendant, and the same person who has signed the plea in abatement filed in this cause. The signature to the letter seems to have been placed there by a rubber stamp, and is a fac simile of the signature of said Jos. I. Barnum, as it appears on said plea."

The objection to the introduction of the letter in evidence was renewed, "because the same had not been duly proven, and that comparison of handwriting could not be resorted to, to identify and prove a written instrument, especially so inasmuch as the signature affixed to said letter was done by a rubber stamp, and not under the seal of the company, or under its signature." The objection was overruled, and the letter admitted as evidence. The letter was written upon what purported to be a printed letter head of the accident society, and described Jos. I. Barnum as the secretary and general manager of the company. The letter was as follows:

"New York, April 11, 1894.

"Messrs. Ingersoll & Peyton, Knoxville, Tenn.—Gentlemen: Replying to yours of the 9th, I herewith inclose, without prejudice to the rights of our society, blanks upon which to submit to us proofs of death in the case of Herman Spiro; and, with further reference to this matter, will say that our adjuster, Mr. McBurney, who is at present in Terre Haute, Ind., received instructions from us some little time ago to call at your office, and make a personal investigation into the matter of Mr. Spiro's death. He has full authority to act for us, and will show the same to you on his arrival.

"Very truly yours,                    Jos. I. Barnum, Secy. & Genl. Mgr."

Did the court err in permitting this letter to go to the jury? The letter was one received in reply to one addressed to the plaintiff in error at its home office in New York. It came, or purported to come, from New York, and purported to be a communication from the plaintiff in error. It was written upon the business letter heads of the corporation, and to it was affixed, by stamping, a fac simile signature of its secretary and general manager. The circumstances made a prima facie case in favor of the genuineness of the letter, and justified its submission to the jury, who were the ultimate triers of the fact of its genuineness. The general rule which requires proof of handwriting where the genuineness of a document or paper writing is involved, has its exceptions. There was no question in the case of proof of handwriting by comparison. The plea in abatement and other papers already in the case did show the undisputed genuine signature of Jos. I. Barnum; and, if it had been claimed that this letter had been written or signed in the handwriting of the same Jos. I Barnum, it would have been competent for the jury to have tried the question of handwriting by comparison of the disputed signature with the admittedly genuine signatures already in evidence for other purposes, though such comparison was probably not admissible by experts. Moore v. U. S., 91 U. S. 270; Hickory v. U. S., 151 U. S. 303, 14 Sup. Ct. 334. Of course, no such comparison could have

been made between a stamped signature and one handwritten, though the circumstance that one was a fac simile of the other might well add to the presumption of genuineness already raised by its receipt in reply to one addressed to the corporation at its place of business.' In considering the exceptions to the general rule requiring proof of handwriting where the genuineness of a letter is involved, Prof. Greenleaf, in his work upon Evidence, at section 573a, says:

"A further exception to the rule requiring proof of handwriting has been admitted in the case of letters received in reply to others proved to have been sent to the party. Thus, where the plaintiff's attorney wrote a letter addressed to the defendant at his residence, and sent it by the post, to which he received a reply purporting to be from the defendant, it was held that the letter thus received was admissible in evidence, without proof of the defendant's handwriting; and that letters of an earlier date, in the same handwriting, might also be read, without other proof."

The same exception is approved in Wharton on Evidence, at section 1328.

The next error assigned is in these words:

"The court erred in allowing the witness for the plaintiff, Masterson Peyton, to give to the jury the contents of the paper writing which said witness, said H. D. McBurney, showed him upon his arrival in Knoxville, and which, according to Mr. Peyton's testimony, was a power of attorney from the defendant to the said H. D. McBurney, without first showing that said writing was lost or destroyed, that it was in the possession of the defendant and therefore could not be produced."

The witness Peyton, after identifying the letter of April 11, 1894, and after it had been allowed to go to the jury, proceeded to say, that:

"After the receipt of this letter on April 17, 1894, a man came to my office, and introduced himself as a Mr. McBurney of New York, and presented to me written authority from the defendant company to settle and adjust the claim of Fannie Spiro; and said that he was acting for the defendant, and had come here to adjust the claim of Fannie Spiro, the plaintiff, against the defendant. He told me he had full authority from the company. He also showed me an instrument, with the seal of the company attached, which"—

Here the attorneys for the defendant objected to the witness giving the contents of said paper writing, because it had not been shown that the paper writing had been lost or destroyed, or that the plaintiff could not have had the same produced, and submitted to the jury. The court overruled said objection, and allowed the witness to give the contents of said paper writing to the jury as he remembered it. The said witness, resuming, said:

"It was a power of attorney or authority from the company to Mr. McBurney to act for it. McBurney took the paper with him. He did not leave it with us. He and I talked some time, and tried to settle the claim; but we failed to come to any agreement. He then left my office. Before he left town, on the same day, the plaintiff commenced her case against the defendant in the circuit court of Knox county, Tennessee, and on the same day process was served on Mr. McBurney, as agent of the defendant."

For the defendant in error it is urged that the assignment of error does not comply with rule 11 of this court (21 C. C. A. cxii., 78 Fed. cxii.) in several respects: First, that it does not quote the full substance of

the evidence admitted; second, it does not point out any error committed by the court; and, finally, that, though the ruling of the court may have been an abstract error, it was innocuous, because the evidence added nothing of weight to that already in, and because in fact the witness did not prove the contents of the paper writing, only characterizing it as a power of attorney authorizing McBurney to represent the corporation. The eleventh rule of this court, after providing for assignments of errors, provides, that "errors not assigned according to this rule will be disregarded, but the court, at its option, may notice a plain error not assigned." This assignment is not in compliance with the rule which requires, "when the error alleged is to the admission or rejection of evidence, the assignment of error shall quote the full substance of the evidence admitted or rejected." Neither does it particularize the error which is really complained of. The witness had shown, not that the paper writing in dispute was lost or mislaid, but that it had been returned to the possession of the defendant's agent, and was, therefore, under the control and in the possession of the defendant. It was, therefore, shown, contrary to the statement in the assignment of error, that the so-called "power of attorney" was in the possession of the agent of the defendant, and presumably could be produced, not by the plaintiff, but by the defendant. This was not such a document as that parol evidence of its contents could be given upon mere proof that it was in the control of the opposite party. Plaintiff should have gone further, and shown that notice had been given the defendant to produce the document on the trial. If, on such notice, this was not done, secondary evidence as to its contents would be admissible, after proof of its existence. Greenl. Ev. § 560. But the assignment of error does not assign as error that notice was not given the defendant to produce this paper. This, however, is the very point now pressed on us as error. If this assignment had been in compliance with the plain rule of the court, we should feel constrained to reverse the judgment, and remand for a new trial. So, if the error had any sound merit in it, and we could be satisfied from the whole record that a probable injustice had been done, we should be disposed, under the discretion reserved in the rule, to notice a plain and meritorious error, though not assigned. That is not the case here. The letter of April 11, 1894, above set out, distinctly declared that "H. D. McBurney has full authority to act for us, and will show the same to you on his arrival." In accordance with this authoritative announcement by the secretary and general manager of the corporation, Mr McBurney did make his appearance in Knoxville, and in the office of the attorneys representing Mrs. Spiro. That letter was prima facie evidence of McBurney's agency. It was competent, therefore, to show the acts and declarations of the agent, whose agency was at least prima facie established. The witness Peyton was permitted, without objection, to testify that McBurney said that he "was acting for the defendant company to settle and adjust the claim of Fannie Spiro," and said "he had full authority from the company, and showed him an instrument,

with seal of the company attached, which," said the witness— At this point it was objected that the witness could not give the "contents of said paper writing, because it had not been shown that the paper writing had been lost or destroyed, or that the plaintiff could not have had the same produced, and submitted to the jury." The bill of exceptions states that "the court overruled said objection, and allowed the witness to give the contents of the paper as he remembered it." The only disclosure then made by the witness which could possibly be construed as a statement of the contents of the paper was the statement that "it was a power of attorney, or authority from the company to Mr. McBurney to act for it." We cannot construe this objection as relating to anything previously stated by the witness. It is an objection to evidence anticipated, and must be taken as an objection to the witness being allowed to say that the paper exhibited to him was a power of attorney authorizing McBurney to act for the defendant. This was no more than had been said without objection, and was little more than a description of the paper exhibited as authorizing the negotiation which the witness said was then had without arriving at a result. A written statement made by this same H. D. McBurney and by Jos. I. Barnum, secretary and general manager of the company, was received as the sworn deposition of each, and read to the jury as evidence for the defendant. Neither denied the execution of such a power of attorney as was mentioned by the witness Peyton, and neither, in this statement, denied the authenticity of the letter of April 11, 1894. In fact, neither made the slightest reference to either of these written admissions touching the agency of Mr. McBurney. The evidence of those two important witnesses was confined to a statement that McBurney was a lawyer, residing in New York, and the president of a corporation of the state of New York known as the Mercantile & Insurance Agency; that the business of such corporation was to "secure facts and give advice to mercantile and insurance companies"; that that company was employed by the defendant below "to furnish to it the facts and circumstances surrounding the death of said Herman Spiro," and that the said Mercantile & Insurance Agency sent McBurney to Knoxville as one of its counsel to investigate said matter, "and he was not in any way connected with the defendant as officer or agent or in any other capacity. He had no authority to bind the defendant in any way, and he could not compromise or adjust any claim. All he could do was to ascertain the facts, and report them to the Mercantile & Insurance Company, which company would in turn report to its client, which, in this case, was the defendant, and which is a corporation of the state of New York." This evidence conflicted most materially with the letter of April 11, 1894, and with the statements of Mr. McBurney to Peyton; yet neither the letter nor the declarations of McBurney are denied or explained, and no denial is made of the statement that McBurney exhibited a paper purporting to be a power of attorney from the defendant to him authorizing him to represent it. And this was the entire evidence upon the issue

joined under the plea in abatement. Under the Tennessee statute above cited, the character of McBurney's agency was immaterial, and the plea denies that he was an agent of any character. Whether his agency was such as at common law would justify service of a writ of summons upon him as a representative of the company is immaterial. If the company had refused to appear or defend said suit, and, when sued upon the judgment in the state of its creation, had attacked the validity of a statute which sought to obtain jurisdiction by service upon an agent of the character of McBurney; or if, when its property was seized under such a judgment, it had resisted upon the ground that the judgment was void,—it would have some standing to assail the judgment as without personal service, and to attack the Tennessee statute as violating the fourteenth amendment of the constitution that forbids a state to "deprive any person of life, liberty, or property, without due process of law." York v. Texas, 137 U. S. 15, 11 Sup. Ct. 9. But this is not the situation of plaintiff in error. It appeared and staked its defense upon the fact of McBurney's agency. That issue has been decided adversely to its contention, and nothing is now open on this record save the proceedings upon the trial of that issue. The failure of both Barnum and McBurney to deny the genuineness of either the letter of April 11, 1894, or of the power of attorney exhibited by McBurney to Peyton, or to deny the declarations of McBurney as proven by Peyton, is most persuasive evidence as to the truth of all that was said by the latter, and of the genuineness of the letter admitting the agency of McBurney. To reverse this case because Peyton was permitted to say that the paper writing shown him by McBurney was "a power of attorney from the plaintiff in error authorizing him to act for the corporation," when McBurney did not deny that he had and exhibited such a paper, would be to reverse for the merest technicality. The facts about this matter were certainly known to one or both of these witnesses, and their silence justifies the conclusion that their testimony upon these points would not be favorable to the plaintiff in error. The objection now urged is so highly technical that we do not feel disposed to leniency in the enforcement of the rules of the court, as we might do, in our discretion, if the error urged was meritorious.

The third and fourth assignments of error are to the refusal of the court to give in charge certain requests. These requests are not made a part of the bill of exceptions. They appear in the record following the bill of exceptions, but are not part thereof. No journal entry either sets them out or refers to them, so that they are in no way made a part of the record, as in Wilson v. Pauly, 18 C. C. A. 475, 72 Fed. 129. Neither does it appear whether these requests were made before or after the charge. To the charge no exception was taken. The assignments of error based upon these requests must therefore be overruled.

The ninth assignment is that the court erred in rendering judgment upon the policy of insurance, because the suit was premature, the policy providing "that all claims under this certificate

shall be subject to proof of insurable interest, and shall be payable within ninety days after satisfactory proof." The assignment states that proof was brought within less than 90 days after the death, of the assured. It is perhaps enough to say that the company repudiated all liability upon the policy, and refused to pay at all. This waived the stipulated delay, and authorized immediate suit. Hochster v. De La Tour, 2 El. & Bl. 678. But, aside from this, no such question was made below, and perhaps could not have been made after going to a jury upon a plea in abatement. "Where the plea in abatement is regularly put in, the plaintiff must reply to it or demur. If he reply, and an issue of fact be thereupon joined, and found for him, the judgment is peremptory quod recuperet." 1 Tidd, Prac. § 641. The reason stated is that, "the defendant choosing to put the whole weight of his cause on this issue, when he might have had a plea in chief, it is an admission that he had no other defense." 1 Bac. Abr. 31; 1 Archb. Pl. 225. This is the practice in Tennessee. Bacon v. Parker, 2 Tenn. 57; Straus v. Weil, 5 Cold. 126, 127; Simpson v. Railway Co., 89 Tenn. 308, 15 S. W. 735.

The eighth assignment of error was that it was error to render final judgment against the defendant, and the judgment should have been respondeat ouster. This assignment was properly withdrawn by counsel for plaintiff in error, as it was manifestly bad.

The judgment must be affirmed.